J-S39023-20

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA    :    IN THE SUPERIOR COURT OF
                              :           PENNSYLVANIA
                              :
       v.                       :
                              :
                              :
ANTONIO LEWIS                 :
                              :
         Appellant           :      No. 3587 EDA 2018

Appeal from the PCRA Order Entered November 15, 2018
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s):  CP-51-CR-0001893-2012

BEFORE:   LAZARUS, J., OLSON, J., and PELLEGRINI, J.[*]

MEMORANDUM BY OLSON, J.:           **FILED SEPTEMBER 28, 2020**

Appellant, Antonio Lewis, appeals from an order entered on November 15, 2018 in the Criminal Division of the Court of Common Pleas of Philadelphia County that dismissed, without a hearing, Appellant's petition filed pursuant to the Post-Conviction Relief Act (PCRA), 42 Pa.C.S.A. §§ 9541-9546.  We affirm.

We previously summarized the factual history of this case on direct appeal.

> On the night of August 12 and into the early morning hours of August 13, 2011, Andy Love and his wife Danielle went with some friends to visit another friend, "Sonny."  They went to [a residence on] Levick Street in Northeast Philadelphia.  [Mr. Love] had also brought along his friends Jovon ("Joon") and Keenan Commarty, and some of his wife's girlfriends.  They sat with Sonny reminiscing and drinking, when someone suggested smoking marijuana.  Around this time, Mr. Love saw three men enter the

_____

[*] Retired Senior Judge assigned to the Superior Court.

house and begin speaking with Sonny; he believed they were supplying the marijuana. One of these men walked up to Mr. Love and said: "You look like somebody I know," but Mr. Love insisted he did not know the man. [The man] then pulled out a gun and told Mr. Love to hand over all of his money. Mr. Love did not take this seriously at first and laughed. The man said: "It's not a joke," and shot Mr. Love in the leg. Mr. Love attempted to grab the gun from the man and punched him in the face. Then [Mr. Love] turned to run from the house. While he was running away he was shot again. Mr. Love testified that his arms felt like they had been paralyzed following the shots from behind.

At around 1:30 [a.m.], Officer Michael Smith responded to a report of a shooting in the [Levick Street area]. Officer Smith was travelling southbound on Frankford Avenue when he observed the complainant, Mr. Love, laying in the middle of the road. Mr. Love was in and out of consciousness, moaning in pain, and bleeding heavily when Officer Smith approached. Officer Smith radioed for an ambulance and secured the scene. Two men approached the officer and said they were present at the time of the shooting. The first witness, who was visibly upset at the time, told the officer that the complainant had been robbed and shot. He also gave the officer a description of the man responsible for the shooting.

Mr. Love's wife, Danielle, was not present at the time of the shooting. She had left the house briefly with a friend, and, upon returning, found police blocking off the area. Before leaving the party, Mrs. Love recalled seeing the Appellant in attendance.

The complainant's sister-in-law, Gina Fehr, visited him in the hospital, but was unable to speak to him when she first arrived. Her sister, the complainant's wife, told her what had happened later. Ms. Fehr knew Sonny from the neighborhood and was Facebook friends with him, so she went to his Facebook page. She saw pictures of Sonny with some of his friends, including several of him with the Appellant. She brought her laptop to the hospital to show the pictures to Mr. Love and asked if he recognized anyone. Mr. Love became teary-eyed upon seeing the picture, and immediately identified the Appellant as the man who had shot him. Mrs. Love also recognized the Appellant as having been at the party before she left. Ms. Fehr and Mrs. Love then showed the pictures to the police, and Ms. Fehr gave a statement about her search.

- 2 -

Detectives Andrew Danks and Christopher Casee were assigned to investigate the shooting. In the course of their investigation, the detectives wanted to speak to Sonny about the incident, and had Mr. Love give Detective Casee's phone number to Sonny through Facebook. Sonny called the number, believing he was speaking to Mr. Love. Sonny apologized for the incident and told Detective Casee: "It wasn't supposed to go down like that." Detective Casee, continuing to pose as Mr. Love, asked Sonny to speak with the police and to contact Detective Danks if he knew anything about the shooting. Within a half an hour, Sonny called back, and after apologizing again, put another man on the phone to speak to Detective Casee. The man identified himself as "Tone," which is also the nickname associate[d] with Appellant on Facebook. Tone insisted the incident "wasn't supposed to go down like that" and said Sonny had nothing to do with the shooting. Detective Casee once again asked them to speak to Detective Danks, but Sonny never called the detectives.

While Appellant was in prison awaiting trial, he made several [tele]phone calls to friends and family that were recorded. Within 48 hours of his arrest[,] Appellant made calls repeatedly asking others: "You got to stay on him. Yo, stay on Andy. Stay on him, get him." He also asked them to "get him to come off that."

In the weeks following the shooting, Mrs. Love was contacted by Appellant's girlfriend, Michelle, about the incident and her husband's statement. Although [Mrs. Love] had never met [Appellant's girlfriend] before, Michelle came to the Love's residence five or six times. Mrs. Love was also approached by Appellant's mother, who wanted Mr. Love to speak to Appellant's attorney. The Appellant's girlfriend also picked up Mr. and Mrs. Love and drove them to the preliminary hearing.

At trial, Mr. Love testified that he has limited use of his right arm and continues to feel pain; he has also lost feeling in several fingers in his right hand. The injuries have also affected his everyday activities, and his relationship with his children.

[As a result of the shooting incident, Appellant was arrested in September 2011. On November 1, 2013, a jury found him guilty of attempted murder, aggravated assault, robbery, recklessly endangering another person ("REAP"), and a firearms violation. On April 28, 2014, the trial court sentenced Appellant to consecutive terms of imprisonment of nine and one-half to 30

> years for attempted murder, nine to 18 years for robbery, and five to 10 years for the firearm violation, for an aggregate term of 23½ to 58 years' imprisonment.]

*Commonwealth v. Lewis*, 2015 WL 6550970, *1-2 (Pa. Super. 2015) (unpublished memorandum), *appeal denied*, 137 A.3d 3 (Pa. 2016).

Appellant filed timely post-sentence motions, which were denied by operation of law. On appeal, this Court affirmed Appellant's judgment of sentence on September 14, 2015 and our Supreme Court denied further review on April 27, 2016. Appellant's judgment of sentence became final 90-days later, on July 26, 2016.

Appellant filed a timely PCRA petition on July 24, 2017, raising two claims alleging trial counsel's ineffective assistance and asserting the existence of a new witness. The Commonwealth moved to dismiss the petition on May 25, 2018 and Appellant filed a response. On September 28, 2018, the PCRA court issued notice, pursuant to Pa.R.Crim.P. 907, that it intended to dismiss Appellant's petition without a hearing. Thereafter, the court dismissed Appellant's petition on November 15, 2018. Appellant filed a timely notice of appeal on December 3, 2018. Pursuant to Pa.R.A.P. 1925(b), the PCRA court, on December 6, 2018, directed Appellant to file a concise statement of errors complained of on appeal. Appellant filed a concise statement on March 11, 2019. The appeal is now ripe for our consideration.

Appellant's brief raises the following issues for our review.

> Did the [PCRA] court err by dismissing Appellant's [petition] without a hearing where trial counsel was ineffective for failing to object when the prosecutor impermissibly asked the jury to infer Appellant's guilt based on his failure to assert his innocence?

> Did the [PCRA] court err by dismissing Appellant's [petition] without a hearing where trial counsel was ineffective for failing to request that the jury be charged that it could consider prior inconsistent statements as substantive evidence?

Appellant's Brief at 2.

Appellant challenges an order that dismissed his petition for collateral relief without a hearing. As such, the following standard and scope of review govern our examination of Appellant's claims.

> We review an order dismissing a petition under the PCRA in the light most favorable to the prevailing party at the PCRA level. This review is limited to the findings of the PCRA court and the evidence of record. We will not disturb a PCRA court's ruling if it is supported by evidence of record and is free of legal error. This Court may affirm a PCRA court's decision on any grounds if the record supports it. Further, we grant great deference to the factual findings of the PCRA court and will not disturb those findings unless they have no support in the record. However, we afford no such deference to its legal conclusions. Where the petitioner raises questions of law, our standard of review is *de novo* and our scope of review plenary.[1]

***Commonwealth v. Ford***, 44 A.3d 1190, 1194 (Pa. Super. 2012) (internal citations omitted).

_____

[1] Under our rules of criminal procedure, a PCRA court may dismiss a petition without a hearing upon 20 days' notice "[i]f the judge is satisfied from [a review of the petition, the Commonwealth's answer, and other matters of record relating to the defendant's claims] that there are no genuine issues concerning any material fact and that the [petitioner] is not entitled to post-conviction collateral relief, and no purpose would be served by any further proceedings[.]" Pa.R.Crim.P. 907(1).

Both of Appellant's claims assert that trial counsel was ineffective. Our Supreme Court previously explained:

> To prevail in a claim of ineffective assistance of counsel, a petitioner must overcome the presumption that counsel is effective by establishing all of the following three elements, as set forth in **Commonwealth v. Pierce**, 527 A.2d 973, 975–[9]76 ([Pa.] 1987): (1) the underlying legal claim has arguable merit; (2) counsel had no reasonable basis for his or her action or inaction; and (3) the petitioner suffered prejudice because of counsel's ineffectiveness. **Commonwealth v. Dennis**, 950 A.2d 945, 954 ([Pa.] 2008). With regard to the second, reasonable basis prong, "we do not question whether there were other more logical courses of action which counsel could have pursued; rather, we must examine whether counsel's decisions had any reasonable basis." [**Commonwealth v. Washington**, 927 A.2d 586, 594 (Pa. 2007)]. We will conclude that counsel's chosen strategy lacked a reasonable basis only if [the a]ppellant proves that "an alternative not chosen offered a potential for success substantially greater than the course actually pursued." **Commonwealth v. Williams**, 899 A.2d 1060, 1064 ([Pa.] 2006) (citation omitted). To establish the third, prejudice prong, the petitioner must show that there is a reasonable probability that the outcome of the proceedings would have been different but for counsel's ineffectiveness. **Dennis**, **supra** at 954. We stress that boilerplate allegations and bald assertions of no reasonable basis and/or ensuing prejudice cannot satisfy a petitioner's burden to prove that counsel was ineffective.

**Commonwealth v. Paddy**, 15 A.3d 431, 442-443 (Pa. 2011) (parallel citations omitted).

In his first claim, Appellant asserts that his petition set forth a valid claim of ineffective assistance where counsel failed to object when the prosecutor allegedly urged the jury to infer Appellant's guilt based upon his post-arrest silence. The factual predicate of this claim involves the prosecutor's closing argument which addressed certain prison telephone calls

Appellant made to friends and relatives. During these calls, Appellant asked those individuals to speak with the victim. Citing *Commonwealth v. Mitchell*, 839 A.2d 202 (Pa. 2003), Appellant claims that the prosecutor's closing argument "implicated the entirety of Appellant's post-arrest actions, including his silence, to create an inference that Appellant's actions were inconsistent with that of an innocent person." Appellant's Brief at 11. According to Appellant, the prosecutor's impermissible comments upon Appellant's post-arrest silence violated Appellant's constitutional rights and trial counsel should have objected and requested a curative instruction. *See id*. Moreover, according to Appellant, the PCRA court misapplied the law prohibiting prosecutorial commentary on a criminal defendant's post-arrest silence when it ordered the dismissal of Appellant's petition without a hearing. *See id*. at 12.

At closing, the Commonwealth made the following argument to the jury with reference to the prison telephone calls Appellant made to his family members and friends.

> You got to hear phone calls that [Appellant] made himself. Those phone calls took place within the first 48 hours of his arrest. They were the first phone calls he made, and in those first phone calls [Appellant] said over and over and over again, "You got to stay on him. Yo stay on [the victim]. Stay on him, get on him[."] Is that what an innocent person does? "Stay on him. Keep putting pressure on him. You need to come up need to get him to come up off himself." Step back from his statement, you know, get him to change his script, change his tune, say something different. "Yo, stay on him." [Appellant] tried to control the situation … and then after he was arrested, he tried to keep controlling [the victim] to stifle his voice to keep him from testifying."

N.T. Trial, 10/31/13, at 44-45. The Commonwealth then continued its argument by contrasting Appellant's prison telephone calls with what an innocent person likely would say when contacting relatives after an unjustified arrest. *See id.* at 46.

The PCRA court determined that Appellant's claim lacked merit since the Commonwealth's argument did not implicate Appellant's right to remain silent. The court offered the following explanation for its ruling.

> Appellant contends that defense counsel should have requested that [the trial court] give a cautionary instruction to the jury regarding the Commonwealth's arguments. However, [A]ppellant's argument fails as he is unable to prove that his claim has any arguable merit. Simply stated, [A]ppellant's trial counsel had no reason to object to the Commonwealth's closing statement to the jury. The Commonwealth properly argued to the jury that [A]ppellant's [tele]phone calls in prison were not what an innocent person would typically say to his family and friends.
>
> Appellant's prison telephone calls were introduced into evidence to support complainant['s] and his wife's testimony that [A]ppellant's family and friends [pressured] complainant to tell the police that someone other than [A]ppellant had shot him. The Commonwealth was certainly permitted to argue to a jury that these are not the words typically spoken by an innocent man to his family and friends.
>
> Appellant in his [concise statement], cites to *Commonwealth v. Mitchell*, 839 A.2d 202 (Pa. 2003). However, this case is distinguishable from *Mitchell*. In *Mitchell*, the Court found that questions posed by the Commonwealth created an inference that the defendant had remained silent from his arrest until trial. In the case *sub judice*, the Commonwealth's closing argument did not implicate [A]ppellant's silence at any point in time. Rather, the Commonwealth simply highlighted to the jury the words spoken by the [A]ppellant during his prison [tele]phone call[s] to his family. The Commonwealth argued that rather than speak to his family about his allegedly unjustified arrest, [A]ppellant chose

to tell his family members to [pressure] the complainant to change his story.

Further, the crux of [A]ppellant's defense at trial was that the complainant did not know who had shot him and that he was led to believe it was [A]ppellant from Facebook pictures shown to him at the hospital. The Commonwealth was certainly permitted to argue to the jury that rather than tell his family members that he was innocent and that [police] had the wrong man, he instead chose to demand that [family members] "got to stay on him … get on him [complainant]."

Moreover, [A]ppellant's involvement in the shooting was already placed before the jury during trial by [A]ppellant's own words spoken to Detective Casee when he acknowledged during [a telephone call] that "it wasn't supposed to go down like that." As such, the Commonwealth's argument was not so much a commentary on [Appellant's] silence but more so what his words actually conveyed during those prison [tele]phone calls – his involvement in the shooting and attempted murder of the complainant.

The jury was free to decide whether the Commonwealth's argument was persuasive or whether the defense[] contention that complainant [] misidentified [Appellant] made more sense in light of the evidence presented [at trial]. However, the Commonwealth's argument did not implicate or violate [A]ppellant's Fifth Amendment right to remain silent. Therefore, had defense counsel objected to the Commonwealth's closing arguments, such objection would have been overruled by the [trial court].

Accordingly, there is no merit to [A]ppellant's claim of ineffectiveness in this regard.

PCRA Court Opinion, 10/10/19, at 7-9.

The PCRA court correctly concluded that Appellant's first claim alleging ineffective assistance of counsel is without merit. In particular, Appellant has not demonstrated that the prosecutor's closing argument in this case constituted an improper reference to Appellant's post-arrest silence. In

*Mitchell*, the case on which Appellant primarily relies, the defendant testified that another individual was the shooter and the Commonwealth, on cross-examination, posed a series of questions as to why the defendant had not previously given that information to the police. *See Mitchell*, 839 A.2d at 212-213. Our Supreme Court reasoned that the ambiguous timeframe in the Commonwealth's questions created an inference that the anticipated answer would "embrace [the defendant's] actions from the moment of the shooting through the time of his arrest and up until the day of trial," which constituted an improper reference to the defendant's post-arrest silence. *Id.* at 214. Here, in contrast, the Commonwealth's closing argument asked the jury to consider specific statements made by Appellant to his friends and family members during prison telephone calls placed by Appellant within the first 48 hours of his arrest. As such, the Commonwealth's argument focused the jury's attention on Appellant's affirmative verbal communications during a specified and narrow time period, not on his silence in the aftermath of his arrest. Under these circumstances, the PCRA court correctly distinguished this case from the holding in *Mitchell* and determined that the Commonwealth did not improperly refer to Appellant's post-arrest silence. Because the PCRA court's legal conclusions are free from error, its findings are supported by the record, and there were no genuine issues regarding any material fact, we conclude that the PCRA court properly dismissed Appellant's first issue without a hearing.

In his second issue, Appellant contends that the PCRA court erred in dismissing his claim that "trial counsel was ineffective for failing to ask for a jury instruction that prior inconsistent statements could be considered as substantive evidence and [for] failing to object when the trial court merely instructed the jury that they could only consider prior inconsistent statement[s] for assessing the weight and credibility of a witness's testimony." Appellant's Brief at 6. By way of background, the victim testified at trial that he gave inconsistent testimony at Appellant's preliminary hearing due to pressure exerted upon him by Appellant's friends and family members. Specifically, the victim explained that, at Appellant's preliminary hearing, he was pressured to identify a person named "Charles" as the individual who shot him. Appellant claims that trial counsel should have asked the court to instruct the jury that the victim's prior inconsistent statements at the preliminary hearing could be used not only for impeachment purposes but also as substantive evidence that someone other than Appellant perpetrated the shooting. Further, Appellant points out that implicating another individual as the shooter was part of defense counsel's strategy and that the victim's identification of an assailant other than Appellant should have been received by the jury as substantive evidence, consistent with the defense theory at trial.

Here, the PCRA court concluded that trial counsel had a reasonable basis to forgo a request that the jury be permitted to consider the victim's

preliminary hearing testimony as substantive evidence that an individual other than Appellant perpetrated the shooting. In the alternative, the PCRA court determined that defense counsel's actions did not prejudice Appellant. The PCRA court offered the following explanation for its conclusions.

> Pennsylvania Suggested Standard Criminal Jury Instruction 4.08A states in relevant part:

> 1. You have heard that a witness [witness' name] made a statement on an earlier occasion that was inconsistent with [his] present testimony.

>   a. **[First Alternative]** You may, if you [choose], regard this evidence as proof of the truth of anything that the witness said in an earlier statement. You may also consider this evidence to help you judge the credibility and weight of the testimony given by that witness at this trial.

>   b. **[Second Alternative]** You may consider this evidence for one purpose only, to help you judge the credibility and weight of the testimony given by the witness at this trial. You may not regard evidence of an earlier inconsistent statement as proof of the truth of anything said in that statement.
>   Pa. SSJI (Crim) 4.08A.

> [The trial court] charged the jury using the second alternative instruction set forth above, thereby instructing that they were to consider complainant's prior inconsistent statement for credibility and weight only. Defense counsel did not request nor object to [the trial court's] decision to instruct the jury using the second alternative instruction.

> However, this request, if made by trial counsel, would have contradicted the defense strategy at trial. As evidenced by trial counsel's closing argument to the jury, counsel focused [A]ppellant's defense on the complainant's lack of credibility regarding his knowledge of who in fact had actually shot him. Trial counsel argued to the jury that complainant was intoxicated at the time of the shooting and did not know who shot him and only identified [A]ppellant as the shooter because his wife and sister-in-law had showed him Facebook pictures of [Appellant].

- 12 -

N.T. [Trial], 10/31/13, at 27-34. In support of this contention, trial counsel reminded the jury that the complainant first identified [Appellant] as the shooter from Facebook pages while still recovering in the hospital and not from an actual police photo array. [*Id.*] at 25.

Further, during his closing argument, trial counsel argued that if the complainant knew the name of the person who shot him as he now claims, then why did he not tell his wife [A]ppellant's name from the beginning[?]. Counsel also argued that the complainant's wife's failure to preserve the note that complainant [wrote] identifying [A]ppellant as the shooter was further evidence that complainant and his wife were not credible and did not know who actually shot [the victim]. [*Id.*] at 33-34.

Most importantly, defense counsel, in keeping with his trial strategy, did not put forth any evidence of any other possible shooter. Thus, trial counsel used the complainant's inconsistent testimony at the preliminary hearing to support [the defense] contention that complainant did not really know who shot him and that he was not credible when he testified that it was [A]ppellant. [A defense] request for [the trial court] to instruct the jury that they were free to use complainant's inconsistent testimony as substantive evidence that a man named "Charles" was the shooter would have conflicted with counsel's reasonable trial strategy [advocating] that the complainant did not know who [] shot him. Therefore, trial counsel had a reasonable basis for not requesting that [the trial c]ourt instruct the jury that complainant's inconsistent statement could be used as substantive evidence that a person other than [A]ppellant shot the complainant. Thus, [A]ppellant cannot meet his burden of proving that defense counsel did not have a strategic basis for his actions.

Moreover, [A]ppellant cannot show the necessary prejudice that resulted from [counsel's] alleged ineffectiveness. At trial, the Commonwealth established that[, shortly after being shot,] the victim identified [A]ppellant as the shooter to his family and to the police [] while at the hospital and then identified him at trial. Appellant corroborated the complainant's identification by incriminating himself during his telephone call with Detective Casee and by urging his family members to put pressure on the complainant. Thus, there was substantial proof that was submitted to the jury that [A]ppellant was in fact the person who shot the complainant. Appellant is therefore unable to meet his

burden of proving that a different outcome [likely] would have resulted if trial counsel [succeeded in obtaining an instruction directing the jury to consider the victim's prior testimony as substantive evidence of a different shooter]. Therefore, there is no merit to [A]ppellant's claim of ineffective assistance in this regard.

PCRA Court Opinion, 10/10/19, at 10-12.

Upon review, we concur in the PCRA court's conclusions. Preliminarily, we agree that trial counsel possessed reasonable grounds for his actions and that the unchosen alternative identified by Appellant did not offer a substantially greater likelihood of success. Trial counsel could reasonably have elected not to highlight the victim's prior testimony in view of the evidence showing that it was the product of intimidation. Trial counsel could also have deemed it more convincing to argue to the jury that the victim's identification lacked credibility due to his intoxication rather than concede the victim's capacity to identify a different shooter.

We further agree with the PCRA court's alternate determination that, under the circumstances, Appellant was not prejudiced by trial counsel's actions. In this case, given the substantial evidence establishing Appellant's role as the shooter, defense counsel's actions do not undermine our confidence in Appellant's conviction. In addition, Appellant has not shown a reasonable probability that the outcome of his trial would have been different but for counsel's alleged ineffectiveness. As such, we conclude that the PCRA court correctly dismissed Appellant's second claim without a hearing.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 9/28/20